1  IAN K. BOYD (SBN 191434)
   iboyd@harveysiskind.com
2  RAFFI V. ZEROUNIAN (SBN 236388)
   rzerounian@harveysiskind.com
3  HARVEY SISKIND LLP
   Four Embarcadero Center, 39th Floor
4  San Francisco, CA  94111
   Telephone:      (415) 354-0100
5  Facsimile:      (415) 391-7124

6

7  Attorneys for Plaintiff
   INTEL CORPORATION
8

9

10              **IN THE UNITED STATES DISTRICT COURT**            **RS**

11          **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

12

13  INTEL CORPORATION, a Delaware        )  Case No.
    corporation,                          )  CV 09    0664
14                                        )  **COMPLAINT FOR INJUNCTIVE RELIEF,**
                                          )  **DECLARATORY JUDGMENT, AND**
15              Plaintiff,                )  **CANCELLATION OF TRADEMARK**
                                          )  **FROM FEDERAL REGISTER**
16      vs.                               )
                                          )
17  PSION TEKLOGIX INC., a Canadian       )
    corporation; PSION TEKLOGIX          )
18  CORPORATION, a Delaware corporation; and )
    PSION PLC, a United Kingdom public limited )
19  company,                              )
                                          )
20              Defendants.               )
                                          )
21  _____ )

22

23      Plaintiff Intel Corporation ("Intel") alleges as follows:

24      1.      This action arises from the allegations recently launched by PSION TEKLOGIX INC.,

25  PSION TEKLOGIX CORPORATION, and PSION PLC (hereinafter collectively "Psion") that it has

26  the exclusive right to use the term "netbook." It does not.  The consuming public has already adopted

27  "netbook" as a generic term for a category of notebook computers that are small, inexpensive, and

28

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, & CANCELLATION OF FEDERAL TRADEMARK

1  contain less processing power, making them optimal for connecting to the internet (or "net"). It is well

2  established that "netbook" does not operate to identify a single source, or brand, of any such computer;

3  netbooks are simply extensions of the notebook category, smaller computers purpose-built for mobile

4  internet access. Psion's allegations therefore fail. Moreover, Psion's (currently) existing trademark

5  registration for the term Netbook cannot resuscitate its alleged rights in a generic term. Accordingly,

6  the Court should cancel Psion's trademark registration, declare that Intel's use of "netbook" is lawful,

7  and enjoin Psion from asserting rights in the netbook term.

8  **I.      JURISDICTION**

9       2.      This Court has personal jurisdiction over Psion because it, on information and belief,

10  conducts business in the State of California and within this judicial district, and has an agent for

11  service of process in California. In addition, Psion has made repeated contacts with businesses with

12  headquarters or significant presences in this judicial district, including Intel, regarding use of the term

13  "netbook."

14       3.      This Court has jurisdiction over this matter pursuant to 15 U.S.C. § 1121 and 28 U.S.C.

15  §§ 1331, 1338 and 2201. Intel's claims are, in part, based on violations of the Lanham Act, as

16  amended, 15 U.S.C. §§ 1051, *et seq.* The Court has jurisdiction over the state law claim pursuant to 28

17  U.S.C. §§ 1338(b) and 1367.

18       4.      Venue lies in the Northern District of California pursuant to 28 U.S.C. § 1391(b) and

19  (c). Intel is informed and believes that Psion transacts or has transacted business in this judicial district

20  and may be otherwise found here, and a substantial part of the events, omissions, and injuries giving

21  rise to Intel's claims occurred in this judicial district.

22  **II.     INTRADISTRICT ASSIGNMENT**

23       5.      This is an intellectual property action and therefore shall be assigned on a district-wide

24  basis per Civil L.R. 3-2(c).

25  **III.    THE PARTIES**

26       6.      Plaintiff Intel is a Delaware corporation having its principal place of business at 2200

27  Mission College Boulevard, Santa Clara, California, which is located in the Northern District of

28

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, & CANCELLATION OF FEDERAL TRADEMARK

1  California.  Intel offers a wide variety of goods and services, which are sold worldwide and throughout

2  the United States, including in the Northern District of California.

3        7.      Upon information and belief, Psion Teklogix Inc., a Canadian corporation and owner of

4  the U.S. Trademark Registration for the term "Netbook," has a principal place of business at 2100

5  Meadowvale Boulevard, Mississauga, Ontario, L5N 7J9, Canada.

6        8.      Upon information and belief, Psion Teklogix Corporation, a Delaware Corporation, has

7  a principal place of business at 2100 Meadowvale Boulevard, Mississauga, Ontario, L5N 7J9, Canada

8  with offices located at 3000 Kustom Drive, Hebron, Kentucky, 41048, and is the U.S. affiliate of Psion

9  Teklogix Inc. and Psion PLC.

10        9.      Upon information and belief, Psion PLC, a United Kingdom public limited company, is

11  the parent company of Psion Teklogix Inc. and Psion Teklogix Corporation, and has a principal place

12  of business located at 48 Charlotte Street, London, W1T 2NS, United Kingdom.

13        10.    Psion purports to provide mobile computing products and services throughout the

14  United States, and promotes its goods and services at the website www.psionteklogix.com.  Upon

15  information and belief, Psion targets customers nationwide via its website, including customers in

16  California and this judicial district, and has customers within this state and this judicial district.

17        11.    At all times herein mentioned, each defendant was the agent, employee, partner, joint

18  venturer, aider and abetter, alter ego, and co-conspirator of or with each of the remaining defendants,

19  and in doing the things hereinafter alleged, was acting within the course and scope of such agency,

20  employment, partnership, joint venture, and conspiracy, and each defendant ratified and approved the

21  acts of the remaining defendants.

22  **IV.    FACTS AND ALLEGATIONS COMMON TO ALL CLAIMS**

23  <u>**Intel**</u>

24        12.    Intel develops, manufactures and sells a wide variety of computer, communications and

25  internet-related products and services.  Intel is a leading manufacturer of microprocessors used in a

26  wide variety of computing applications.  Among other things, Intel manufactures low-powered

27  processors, such as the INTEL® ATOM™ processor, which are used in netbooks.  Intel does not and

28

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, & CANCELLATION OF FEDERAL TRADEMARK

1  has never manufactured any netbooks, and has never offered any "netbook" branded products or

2  services.  Indeed, it maintains the URL www.netbook.com to promote netbook computers featuring the

3  INTEL ATOM processor, just as Intel maintains other generic URLs such as www.pc.com,

4  www.chips.com, and www.connectedpc.com to promote products featuring Intel processors.

5  However, as shown below, netbooks also feature non-Intel processors, just as other personal computers

6  ("pc") may feature non-Intel processors.

7  **Psion**

8  　　　　13.　　Psion purports to be the owner of U.S. Trademark Registration No. 2,404,976 issued on

9  November 21, 2000 for the mark Netbook for use in connection with "laptop computers" (hereinafter

10  "Netbook Registration").

11  　　　　14.　　On information and belief, Psion is a provider of mobile computing products and

12  services, with a present focus on handheld and vehicle-mount computers for industrial use.  Psion

13  claims that it began to offer laptop computers under the mark Netbook in the United States in

14  approximately 1999.  Psion discontinued its offering of laptop computers under the mark Netbook in

15  approximately 2003.  In approximately October of 2003, Psion launched the Psion Netbook Pro laptop

16  computer, which on information and belief has long since been discontinued.

17  　　　　15.　　On information and belief, Psion's sales and marketing of products under the Netbook

18  Registration were never significant in the United States, and the Netbook designation did not operate

19  as an indicator of source to the general consuming public in the United States.  Moreover, on

20  information and belief, Psion no longer offers laptop computers under the mark Netbook, or even

21  Netbook Pro.

22  　　　　16.　　Psion's U.S. trademark registration for "laptop computers" registered on November 21,

23  2000.  On November 17, 2006, only four days before the applicable deadline to maintain its

24  registration, Psion filed a combined declaration of use and incontestability under 15 U.S.C. §§ 1058

25  and 1065 ("Section 8 & 15 Declaration"), which included a sworn declaration from Herb Turzer,

26  Senior Product Management.

27

28

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, & CANCELLATION OF FEDERAL TRADEMARK

17.     Mr. Turzer swore that Psion was, as of November 17, 2006, using the Netbook trademark "in commerce on or in connection with all goods listed in the above-identified registration" and that Psion "has used the above-identified trademark in commerce for five (5) consecutive years after the date of registration or the date of publication." Upon information and belief, such statements were false as of November 17, 2006.

18.     The declaration which Mr. Turzer signed on behalf of Psion states: "The undersigned, being hereby warned that willful false statements and the like are punishable by fine or imprisonment, or both, under Section 1001 of Title 18 of the United States Code, and that such willful false statements may jeopardize the validity of this document, declares that I am properly authorized to execute this document on behalf of the Owner; and all statements made of my own knowledge are true and all statement made on information and belief are believed to be true."

19.     In support of its declaration, Psion attached a specimen of an advertisement for its Netbook laptop computer, the sale of which, on information and belief, was discontinued in 2003. Intel is informed and believes that Psion was not offering for sale laptop computers under the Netbook trademark on the date that the above declaration was signed and filed with the United States Patent and Trademark Office ("USPTO"). Furthermore, Intel is informed and believes that Psion did not use the Netbook trademark on laptop computers for five consecutive years following the date of registration. The USPTO relied upon Psion's material false statements in renewing the Netbook Registration, and would not have renewed the registration had it known the truth.

20.     On information and belief, Psion's Netbook Registration was maintained through material false misstatements that it was using the mark on the goods specified in the Registration on the date that it filed its Section 8 and 15 affidavits (for purposes of renewing its registration), when in truth it was not.

### Netbook as a generic term

21.     In or before 2008, in light of recent technological innovations, the computer industry (including manufacturers and retailers) and the media began to use the term netbook to describe a class of compact computers that were small, inexpensive, and optimal for connecting to the internet "on the

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, & CANCELLATION OF FEDERAL TRADEMARK

1 | go." The term "netbook" was a logical name for this new category of computer, with "net"

2 | representing its specific purpose (connectivity to the net) and "book" representing its size and mobility

3 | (as in the existing category name "notebook"). There is no alternative term with any appreciable usage

4 | that describes the netbook category, just as there is no alternative term with any appreciable usage to

5 | alternatively describe desktops.

6 |      22.    In part because of the production of computer processors which permitted these smaller,

7 | more compact computers to be produced, the term netbook achieved widespread usage in 2008, and

8 | numerous commentators already predict that 2009 is the "year of the netbook." Beginning with the

9 | launch of the Asus Eee PC in 2007, many computer manufacturers began to launch inexpensive

10 | compact laptop computers with lower processor speeds that were optimal for a mobile connection to

11 | the internet. These netbooks included Acer Aspire One, Sylvania GNET, Samsung NC10, the MS

12 | Wind series, and the Hewlett-Packard Mini series, among others. To accurately distinguish these

13 | computers from notebooks, and to ensure that consumers are aware of the different characteristics of

14 | these machines, both computer manufacturers and many of the nation's largest retailers, such as

15 | Amazon.com, Best Buy, Staples, Target, Sam's Club, and Costco, use the term netbook generically in

16 | offering such computers, without regard to brand or source.

17 |      23.    The term netbook is not only not brand specific with respect to the computer

18 | manufacturer (e.g. Hewlett Packard, Samsung, etc.), it is also not brand specific with respect to the

19 | computer processor contained inside the netbook. For example, Sylvania and Everex each offer a

20 | netbook with a VIA C7 (non-Intel) processor. Other processor companies, such as NVIDIA,

21 | Qualcomm, and Texas Instruments, have also used the term netbook.

22 |      24.    Traditional and online media sources have been using the term "netbook" to identify

23 | this category of computers. Such sources include, but are not limited to, The Wall Street Journal,

24 | CNET News, PC Magazine, and The San Diego Union-Tribune:

25 |     •  "A new class of small laptops entering the market has some of the major laptop vendors on edge. These computers have been dubbed *netbooks*. Originally, they were targeted at emerging

26 | markets for use in education. Now they're finding their way into the U.S., where they're being snapped up by consumers as second laptops for use in the home or by kids."

27 | *Will Netbooks Shake Up the Laptop Market?*, PC MAGAZINE, March 28, 2008.

28 |

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, & CANCELLATION OF FEDERAL TRADEMARK

- "With low-power processors, tiny screens, and finger-cramping keyboards, Netbooks aren't good for much more than surfing the Web, checking e-mail, working on office documents, and maybe a little light multimedia playback--but that's still 90 percent of what we do with our laptops anyway."
  *Searching for the perfect netbook*, CNET NEWS, August 18, 2008.

- "At the start of this year, most netbooks lacked hard disks, instead offering very limited storage via memory chips — often less storage than a $199 iPhone.  They were pitched as limited devices mainly meant for using the Internet — thus the name 'netbook' — and their makers assumed users mainly would use Web-based applications."
  *Netbooks Come Into Their Own*, WALL STREET JOURNAL ONLINE, November 5, 2008.

- "Since their inception, netbooks have followed a simple common blueprint with definable characteristics.  They generally weigh under 3 pounds, cost less than $500, and cram in basic parts – small battery, integrated graphics, and a conservative feature set."
  PC MAGAZINE, December 3, 2008.

- "The one product buoying PC makers right now, however, is the Netbook. … Jumping on the Netbook trend has been a boon to Acer and Asus in particular.  While Asus continues to lead the pack, Acer has made some serious headway in establishing its brand via the tiny notebooks."
  *The rise of the Netbook*, CNET NEWS, December 18, 2008.

- "Devices such as the EE PC from Asus and similar products from Hewlett-Packard and Dell have created and defined the netbook category as computers designed for on-the-go Web surfing, weighing roughly three pounds, with prices as low as $300"
  SAN DIEGO UNION-TRIBUNE, Jan. 8, 2009.

As would be expected, consumers are also using the term netbook to identify this category of computers:

- "I just bought a netbook.  For what it's worth, having now put myself through all this angst, I decided in the end to go back to the one that had most impressed me when I first tried out different devices at J&R a few months back, the HP 2133. … All in all, about $470 for a less than three pound device that should let me get massively more work done."
  http://streetcarstospaceships.typepad.com/from_streetcars_to_spaces/2008/10/i-just-bought-a-netbook.html,   October 14, 2008.

- "Netbooks are popular for people on the go.  There are a lot to choose from and I will be blogging about several of them. … I like this little gadget because it can go with me practically anywhere. I take it to work with me everyday because I can get on it during my lunch hour and not have to use my office computer."
  http://gadgetchic1.blogspot.com/2008/10/sylvania-g-netbook.html, October 23, 2008.

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, & CANCELLATION OF FEDERAL TRADEMARK

25. At all times, Psion was fully aware, or should have been aware, of the widespread and ubiquitous third-party generic use of the term netbook, but it did little if anything to protect its purported rights, much less discharge its duty to police third-party uses of its purported trademark. Specifically, Psion did not contact Intel or, on information and belief, any major computer manufacturers or retailers, newspapers, magazines, or other media, until at least December 2008 to belatedly assert its rights to the term netbook.

26. Moreover, Psion did not engage in a campaign or any other visible efforts to educate anyone, much less the consuming public, about its purported rights in the netbook term. Instead, Psion sat back idly as netbook evolved as a generic term for a particular category of computer.

27. Psion cannot now attempt to revive any purported proprietary interest in this generic term once it has lost whatever source identifying function it may have once had.

## The Present Dispute

28. Long after the public adopted netbook as a generic term, on or around December 22, 2008, Psion sent cease and desist letters to various computer manufacturers, retailers, bloggers, and others, in an effort to lay claim to its purported rights in the Netbook Registration. On December 23, 2008, Peter Langley, outside counsel to Psion PLC, wrote to Intel's general counsel in Santa Clara, California and demanded that Intel cease use of the term netbook. Mr. Langley also sent the same letter to Intel's legal department in the United Kingdom. Psion sent substantially similar letters to many other parties regarding use of the term netbook, including but not limited to Intel's business partners, such as (on information and belief) Dell, HP, and Best Buy.

29. On January 20, 2009, Intel, through its counsel, responded to Mr. Langley's December 23rd letter, and noted that Intel used the term netbook in its generic sense and that it did not intend to cease use of that term. Intel expressly denied any claim that it was in any way liable for trademark infringement or unfair competition arising out of its use of the term netbook.

30. On February 6, 2009, Mr. Langley responded on behalf of Psion. In his letter, Mr. Langley asserted that Intel's position that the word netbook is generic was not a valid defense to "infringement under the Lanham Act" and that Psion disagreed that Intel's use of the mark was "non-

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, & CANCELLATION OF FEDERAL TRADEMARK

1   infringing." Accordingly, Psion's counsel concluded that "we can therefore see no basis for a 'good

2   faith' defence to infringement." The letter further contended that "[w]e believe your client's

3   inducement to be ongoing" and that Intel has "legal liabilities" arising from its use of the netbook term.

4   The letter further asserted that "Intel aided, abetted and otherwise induced manufacturers and retailers"

5   to "use the term 'netbook'" for netbook computers. He suggested that the 30 million hits that result

6   from a Google search for the term "netbook" was not, in Psion's view, evidence of genericness, but

7   rather "seem[s] to point to the scale of potential damages due to [Psion] if a court were to assess

8   damages for infringement [against Intel] on a reasonable royalty basis."

9       31.    On information and belief, on or around January 29, 2009, Psion filed a complaint with

10  Google Inc. ("Google") via Google's Adwords Trademark Complaint Procedure asserting its Netbook

11  Registration. As a result, Google informed Intel that Google would prohibit all advertisements that

12  include the term "netbook" in the ad text. This action by Psion had the immediate effect of effectively

13  ending Intel's (and all others') ability to advertise the netbook category of computers via search engine

14  marketing.

15      32.    On information and belief, Psion's current campaign to purportedly protect its

16  trademark rights is little more than an attempt to profit from the widespread use of the netbook term.

17      33.    Despite Psion's own acknowledgement that a Google search of the term "netbook"

18  retrieves over 30,000,000 hits, Psion has failed to point to even one instance of actual confusion over

19  the past two years.

## FIRST CAUSE OF ACTION
## CANCELLATION OF TRADEMARK REGISTRATION
### (15 U.S.C. § 1119)

22      34.    Intel realleges and incorporates herein by reference the matters alleged in Paragraphs 1

23  through 33 of this Complaint.

24      35.    Psion purports to be the owner of U.S. Trademark Registration No. 2,404,976 issued on

25  November 21, 2000, for the mark Netbook for use in connection with "laptop computers."

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, & CANCELLATION OF FEDERAL TRADEMARK

36.     As detailed above, the Netbook mark does not serve to identify Psion as the source of goods or services offered under the Netbook mark.  Thus, the Netbook Registration is invalid under 15 U.S.C. §§ 1052(e), 1115(b)(4), 1115(b)(8), and/or 1064(3), and should be cancelled.

37.     Furthermore, as detailed above, Psion made a knowing and material misrepresentation in the renewal of the Netbook Registration by stating that it was using the mark on all of the goods and services specified in the Netbook Registration on the date that it filed its Section 8 and 15 affidavits when it was not.  Psion's Netbook Registration therefore should be cancelled due to its commission of fraud on the United States Patent and Trademark Office, pursuant to 15 U.S.C. § 1115(b)(1).

38.     The registration should further be canceled pursuant to 15 U.S.C. § 1115(b)(2) because Psion has abandoned the Netbook Registration by not using the mark in commerce for three consecutive years with no intent to resume use.

39.     Due to the threats made by Psion against Intel and Intel's business partners, Psion's Netbook Registration is injurious to Intel within the meaning of 15 U.S.C. § 1064(3), and Intel will be damaged if the registration is not canceled.

40.     This Court, pursuant to its authority under 15 U.S.C. § 1119 to order cancellation of trademark registrations and otherwise rectify the U.S. trademark register with respect to the registration of any party to an action before it, should order cancellation of U.S. Trademark Registration No. 2,404,976.

## SECOND CAUSE OF ACTION
## DECLARATION OF NON-INFRINGEMENT
### (28 U.S.C. § 2201)

41.     Intel realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 40 of this Complaint.

42.     Based on the foregoing allegations, there exists between the parties a substantial controversy of sufficient immediacy and reality to warrant declaratory relief.

43.     Intel has not infringed and does not infringe, directly or indirectly, the Netbook Registration or any other purported trademark rights owned by Psion.

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, & CANCELLATION OF FEDERAL TRADEMARK

44.     Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 that any use by Intel of the generic term "netbook" in connection with the netbook category of laptop computers does not, contributorily or otherwise, infringe any trademark rights of Psion, and further in no way causes Intel to unfairly compete with Psion.

**THIRD CAUSE OF ACTION**
**UNFAIR COMPETITION**
**(CAL. BUS & PROF. CODE § 17200)**

45.     Intel realleges and incorporates herein by reference the matters alleged in Paragraphs 1 through 44 of this Complaint.

46.     Psion's acts described above, including but not limited to its fraudulent conduct before the U.S. Patent and Trademark Office for the purpose of maintaining its registration, constitute unfair competition in violation of California Business and Professional Code § 17200 *et seq.*, as they are likely to deceive the public.

47.     Psion's acts of unfair competition have caused and will continue to cause Intel irreparable harm.  Intel has no adequate remedy at law for Psion's unfair competition.

48.     Intel is entitled to a judgment enjoining and restraining Psion from engaging in further unfair competition.

**PRAYER FOR RELIEF**

WHEREFORE, Intel prays for relief as follows:

1.     An order compelling the Commissioner of Trademarks of the United States to cancel U.S. Trademark Registration No. 2,404,976 issued on November 21, 2000;

2.     An order enjoining Psion from asserting any trademark rights in the term "netbook," or any term similar thereto;

3.     For a declaration that Intel's use of the term "netbook" in connection with laptop computers does not violate the Lanham Act, 15 U.S.C. § 1125, nor does it otherwise constitute trademark infringement, unfair competition or otherwise damage Psion;

4.     For Intel's attorneys' fees;

5.     For Intel's costs and disbursements in this action; and

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, & CANCELLATION OF FEDERAL TRADEMARK

1         6.     A judgment granting Intel such other and further relief as the Court deems just and

2    proper.

3    Dated:  February 13, 2009                            Respectfully submitted,

4                                           HARVEY SISKIND LLP
                                            IAN K. BOYD

5                                           RAFFI V. ZEROUNIAN

6

7                                      By:  _____
                                                  Ian K. Boyd

8                                           Attorneys for Plaintiff

9                                           INTEL CORPORATION

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, & CANCELLATION OF FEDERAL TRADEMARK

1

**CERTIFICATION OF INTERESTED ENTITIES OR PERSONS**

2

Pursuant to Civil L.R. 3-16, the undersigned certifies that as of this date, other than the named

3

parties, there is no such interest to report.

4

Dated:  February 13, 2009

5

Respectfully submitted,

6

HARVEY SISKIND LLP
IAN K. BOYD

7

RAFFI V. ZEROUNIAN

8

9

By:_____

10

Ian K. Boyd

11

Attorneys for Plaintiff
INTEL CORPORATION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT FOR INJUNCTIVE RELIEF, DECLARATORY JUDGMENT, & CANCELLATION OF FEDERAL TRADEMARK